UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

DANIEL SANTIAGO,

                Plaintiff,

v.

HEIDI WASHINGTON, et al.,

                Defendants.

_____/

Case No. 1:22-cv-591

Honorable Phillip J. Green

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Plaintiff previously sought (ECF No. 2), and was granted (ECF No. 5), leave to proceed *in forma pauperis*.  Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge.  (ECF No. 6.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b) and 42 U.S.C. § 1997e(c).  The Court is required to conduct this initial review prior to the service of the complaint.  *See In re Prison Litigation Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).  Service of the complaint on the named defendant(s) is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999).  "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350.  "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted).  That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351.  Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g., Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) (stating that "[p]ursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c).  That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ."

28 U.S.C. § 636(c).  Because the named Defendants have not yet been served, the undersigned concludes that they are not presently parties whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way that they are not parties who will be served with or given notice of this opinion.  *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to the action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.  28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c).  The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible.  *Denton v. Hernandez*, 504 U.S. 25, 33 (1992).  Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim. Further, the Court will deny Plaintiff's motion for the appointment of counsel.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains, however, occurred at the Bellamy Creek Correctional Facility (IBC) in Ionia, Ionia County, Michigan. Plaintiff sues MDOC Director Heidi Washington; Registered Nurses Katherine West, Unknown Puffman, Unknown Macintire, Mary R. Corning, and Jerald C. Ritz; Corrections Officer Unknown Butler; Dr. Unknown Sices; Prisoner Counselor Unknown Houghton; and Warden McCauly.

Plaintiff alleges that on July 7, 2021, Dr. Saaid (not a defendant) prescribed him Venlafaxine for depression and PTSD.  Plaintiff states that the medication had potential side effects, including dizziness, sleepiness, fatigue, and weakness.  Plaintiff states that the directions for taking Venlafaxine included avoiding driving and engaging in other activities that required alertness until seeing how the medication affected the patient, which could take up to a month.  On August 15, 2021, a little over a month after Plaintiff had been prescribed Venlafaxine, Plaintiff fell off his assigned top bunk and struck his head on the cement table in his cell.  Plaintiff states that he was unconscious for an unspecified period of time, and his cellmate called for help.  Plaintiff was transported to Butterworth Hospital in Grand Rapids, Michigan.

While at the hospital, Plaintiff was seen by Dr. Nicholas Dyga, who noted that Plaintiff was suffering from a hematoma and front scalp swelling.  Plaintiff attaches a copy of the medical record from Butterworth Hospital, which shows that he was

admitted to the Emergency Department and examined by Nicholas Dyga, MD, and Corey L. Fellows, DO, who noted that Plaintiff was nonverbal following his injury, but was able to follow commands and was hemodynamically stable.  Blood work and imaging, including a CT of the head, neck, and spine were completed and showed no acute traumatic injury.  After his CT, Plaintiff began to speak and reported persistent midline back pain from the neck to the lower thoracic region, which prompted an MRI of the cervical spine.  (ECF No. 1-2, PageID.16–22.) Dr. Fellows noted:

> Patient was signed out to my colleague, Dr. Dyga, during routine emergency department sign out. See their note for details of initial workup. In brief, this patient is a 35-year-old man who presents to the emergency department as a level 2 trauma activation after falling off of a bunk bed. Pan scans were obtained and showed no acute injury. Cervical collar was unable to be cleared at the bedside as the patient was endorsing midline cervical spine tenderness to palpation. MRI cervical spine was ordered by the trauma team . . . . MRI showed no evidence of acute pathology. Cervical collar was removed at bedside. He was instructed to follow up with his primary care provider. Emergency department findings, my diagnostic impression, treatment plan, warning signs, reasons to return to the emergency department were discussed with the patient at bedside prior to discharge. Patient was given an opportunity to ask questions and voiced understanding of discharge instructions. Patient was discharged home in stable condition.

(*Id.*, PageID.22.)

Plaintiff was treated and was transported back to IBC.  Plaintiff asserts that it is at this point that Defendants began to violate his Eighth Amendment rights.  Upon Plaintiff's return to the prison, he was not processed through Health Services in violation of policy.  Plaintiff was returned to his housing unit and assigned a top bunk once again.  Plaintiff told healthcare staff that he was continuing to suffer from dizziness and pain in his back and neck to the point where he was unable to walk any distance.  Plaintiff also states that he was paralyzed for a time.

Plaintiff states that he relayed his symptoms to healthcare staff, including Defendants West, Puffman, Macintire, Corning, Ritz, and Siees, as well as to custody and administrative staff, including Defendants Butler, Houghton, McCauly, and Washington.  Plaintiff states that Defendant Houghton told him that there was nothing he could do for him.  Plaintiff then contacted housing unit supervisor Gregory Schulz, who was a member of the Warden's Forum.  Mr. Schulz brought the matter to the attention of Defendant Houghton, who again responded that there was nothing he could do for Plaintiff.  Mr. Schulz then raised the issue with Defendant McCauly, who responded that he would look into the matter.  However, Defendant McCauly never followed through with this assurance.

Plaintiff makes a conclusory assertion that all of the named Defendants were deliberately indifferent to his serious medical condition in violation of the Eighth Amendment.  Plaintiff states that he continues to suffer from severe headaches and dizziness.  Plaintiff seeks damages and declaratory relief.

## II.    Plaintiff's Motion for the Appointment of Counsel

Plaintiff has filed a motion for the appointment of counsel.  (ECF No. 3.) Indigent parties in civil cases have no constitutional right to a court-appointed attorney. *Abdur-Rahman v. Mich. Dep't of Corr.*, 65 F.3d 489, 492 (6th Cir. 1995); *Lavado v. Keohane*, 992 F.2d 601, 604–05 (6th Cir. 1993).  The Court may, however, request an attorney to serve as counsel, in the Court's discretion. *Abdur-Rahman*, 65 F.3d at 492; *Lavado*, 992 F.2d at 604–05; *see Mallard v. U.S. Dist. Ct.*, 490 U.S. 296 (1989).

Appointment of counsel is a privilege that is justified only in exceptional circumstances.  In determining whether to exercise its discretion, the Court should consider the complexity of the issues, the procedural posture of the case, and Plaintiff's apparent ability to prosecute the action without the help of counsel.  *See Lavado*, 992 F.2d at 606.  The Court has carefully considered these factors and has determined that the assistance of counsel is not necessary to the proper presentation of Plaintiff's position.  Plaintiff's motion for the appointment of counsel (ECF No. 3) therefore will be denied.

## III.   Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-

7

pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Defendant Washington

Although Plaintiff alleges in a conclusory manner that he relayed his symptoms to healthcare staff, as well as custody and administrative staff, including Defendant Washington, Plaintiff fails to make specific factual allegations against Defendant Washington.  Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability.  *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009).  A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575–76 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d

889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 576; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff has failed to allege that Defendant Washington engaged in any active unconstitutional behavior. Accordingly, he fails to state a claim against her.

### B.     Eighth Amendment

Plaintiff claims that following his release from the hospital, Defendants displayed deliberate indifference towards his needs in violation of the Eighth Amendment. The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 97, 103–04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104–05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

Deliberate indifference may be manifested by a doctor's failure to respond to the medical needs of a prisoner, or by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.  Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under § 1983." *Estelle*, 429 U.S. at 104–05.

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.*  In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.*  The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004); *see also Phillips v. Roane Cnty.*, 534 F.3d 531, 539–40 (6th Cir. 2008).  Obviousness, however, is not strictly limited to what is detectable to the eye.  Even if the layman cannot see the medical need, a condition may be obviously medically serious where a layman, if informed of the true medical situation, would deem the need for medical attention clear. *See, e.g., Rouster v. Saginaw Cnty.*, 749 F.3d 437, 446–51 (6th Cir. 2014) (holding that a prisoner who died from a perforated duodenum exhibited an "objectively serious need for medical treatment," even though his symptoms appeared to the medical staff at the time to be consistent with alcohol withdrawal); *Johnson v. Karnes*, 398 F.3d 868, 874 (6th

Cir. 2005) (holding that prisoner's severed tendon was a "quite obvious" medical need, since "any lay person would realize to be serious," even though the condition was not visually obvious).  If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind" in denying medical care.  *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).  Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.* at 837.  To prove a defendant's subjective knowledge, "[a] plaintiff may rely on circumstantial evidence . . . : A jury is entitled to 'conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.'"  *Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 842).

However, not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105–06 (internal quotation marks omitted).  Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017); *Briggs v. Westcomb*, 801 F. App'x 956, 959 (6th Cir. 2020); *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering.  *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment."  *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976).  If "a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort

law." *Id.*; *see also Rouster*, 749 F.3d at 448; *Perez v. Oakland Cnty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440–41 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998).  "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'"  *Mitchell*, 553 F. App'x at 605 (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)).  He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cnty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff asserts that he was assigned to a top bunk and that Defendants failed to address his complaints of various symptoms related to the injuries he sustained from falling off his bunk on July 7, 2021.  Plaintiff attaches a copy of a "declaration" by prisoner Gregory John Schulz, which states that he raised Plaintiff's situation with Defendant Houghton, informing him that Plaintiff had fallen off his bunk and seriously injured himself.  Schulz states that Defendant Houghton told him there was nothing he could do for Plaintiff.  (ECF No. 1-3.)  Schulz also states that he raised the issue with Defendant McCauly at the Warden's Forum meeting, and that Defendant McCauly stated that he would look into it. Schulz concludes by saying that Defendant McCauly failed to take any action. (*Id.*)

Plaintiff also attaches copies of healthcare kites that he submitted following his hospitalization.  On August 18, 2021, Plaintiff kited, "I'm still in pain from my head to middle back over the counter pills not working I haven't been evaluated by a Doctor why? And haven't received the ice detail or ice for my head.  What's going on??" (ECF No. 1-4, PageID.27.)  Defendant Corning responded that Plaintiff was on the wait list to see a medical provider and that the ice detail had expired after three days. (*Id.*)  On August 20, 2021, Plaintiff sent two kites to say that he continued to have headaches, dizziness, weakness, difficulty breathing, and pain in his neck and down his back. Plaintiff also claimed to have difficulty walking because of the head, neck, and back pain.  Defendant West responded that Plaintiff had an upcoming appointment.  (*Id.*, PageID.28–29.)  On August 25, 2021, Plaintiff kited to say that he was seeking medical help for worsening head, neck, and back pain, which started on August 24, 2021.  Defendant Ritz responded by telling Plaintiff that a provider referral would be made on his behalf.  (*Id.*, PageID.30–31.)

On August 26, 2021, Plaintiff again kited that he was having difficulty walking because of his pain.  Kevin D. Corning, who is not listed as a Defendant, responded that it had only been about a week since his injury and that it could take several weeks for the symptoms to resolve, but that he would send Plaintiff some exercises to help with the recovery.  (*Id.*, PageID.32.)  On August 28, 2021, Plaintiff kited seeking pain medication for back and neck pain, as well as for migraine headaches. Defendant West responded that Plaintiff had an upcoming appointment. (*Id.*, PageID.33.)  Plaintiff kited again the next day to ask what day he had started taking

14

"the efexer medication." (*Id.*, PageID.34.) Defendant West told Plaintiff that he had started the medication on August 1, 2021 and had begun refusing it on August 12, 2021. (*Id.*) Plaintiff sought his hospital records and two medical release forms for his attorneys via a kite dated September 2, 2021. (*Id.*, PageID.35.) Plaintiff was provided with the appropriate forms and instructions on how to obtain his records by Kevin Towns, who is not named as a Defendant in this action. (*Id.*)

A careful review of Plaintiff's complaint and the attachments thereto fails to reveal factual allegations sufficient to support Plaintiff's Eighth Amendment claims. The record shows that Plaintiff suffered from various symptoms as a result of his accident and that he submitted kites regarding these symptoms on several occasions. However, it is apparent that Plaintiff received timely responses to each of his medical kites, indicating that he would be seen for his complaints or that he had already been seen and was being provided with education and treatment. Plaintiff also implies that he should not have been required to sleep on a top bunk, but he fails to allege facts showing that after his release from the hospital, he had a medical condition which required that he be placed on a bottom bunk detail or that he was continued on the same medication which allegedly caused his fall. Because Plaintiff fails to allege that any of the named Defendants were deliberately indifferent to a serious medical condition, his Eighth Amendment claims are properly dismissed.

The Court concludes that Plaintiff has failed to allege that any defendant was deliberately indifferent to Plaintiff's medical needs.  But there is an additional reason to dismiss Plaintiff's claims against the remaining custody and administrative defendants (Defendants Mccauly, Houghton, and Butler).

Administrative or custody officials who have no training or authority to supervise healthcare officials cannot be held liable for those officials' inadequate care. *See Winkler v. Madison Cnty.*, 893 F.3d 877, 895 (6th Cir. 2018) (finding that a custody officer was entitled to rely on medical provider's judgment); *Smith v. Cnty. of Lenawee*, 505 F. App'x 526, 532 (6th Cir. 2012) ("[I]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." (quoting *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004))); *see also Newberry v. Melton*, 726 F. App'x 290, 296–97 (6th Cir. 2018) (same); *Cuco v. Fed. Med. Ctr.-Lexington*, No. 05-CV-232-KSF, 2006 WL 1635668, at *21–22 (E.D. Ky. June 9, 2006) (holding that prison administrative officials were not liable for overseeing and second-guessing care given by medical officials).  Because the attachments to Plaintiff's complaints show that he was in consistent and direct communication with the healthcare defendants (Defendants West, Puffman, Macintire, Corning, Ritz, and Siees), Plaintiff's claims that the custody and administrative defendants did not intervene fails to state a claim that they were deliberately indifferent to Plaintiff's medical needs.

16

## Conclusion

Plaintiff's motion for the appointment of counsel (ECF No. 3) will be denied. Further, having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c).  The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3).  *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997).  Although the Court concludes that Plaintiff's claims are properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous.  *Coppedge v. United States*, 369 U.S. 438, 445 (1962).  Accordingly, the Court does not certify that an appeal would not be taken in good faith.  Should Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g).  If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

This is a dismissal as described by 28 U.S.C. § 1915(g).

An order and judgment consistent with this opinion will be entered.


Dated:   September 19, 2022                    /s/ Phillip J. Green
                                              PHILLIP J. GREEN
                                              United States Magistrate Judge

17